**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CONAIR CORPORATION AND BABYLISS )
FACO SPRL, )
                                     )
             Plaintiffs, )
                                      )
   v. )
                                        )
XIAO MAI, ZHANGXIUXIU, HENRY ROWE, )
LIINBO, JINYING LIN, FENG JIN, YE )
BINBIN, ZHONG GUORENMIN, SU SHENG, )
LANG QIYU, LV DANDAN, ZHU XINXIAO, )
DAN THURSTON, WEI QINGLAN, OUYANG )
JIEJIAN, WEN BEN ZHOU, NIAMH BRADY, )
TORO SUSAN, ABDELHAFIDE )
HAMMOUMI, LUCAS BRENNAN, AMAYA )
RAPHAIL, CAMERON LAURENT, ANNE G. )
HAWKINS, ATHOMAS, DEJIA LI, )
BESSJONES, BEULAHHALL, BGFTRTGHY, )
BROOKLEE, BROOKPEDRO, )
CANDICELOPEZ, WANGZHONGKAI, )
TAMEKA D HENDERSON, OUYANG )
RANYUN, OUYANG GUKU, CHEN DONG, )
PRIVACY PROTECTION SERVICE INC )
D/B/A PRIVACYPROTECT.ORG, DGDFHDH, )
AMBERBULL, DOREENCARTER, DEVIN, )
WENBEN RHYS, BLANKA SON, )
EVEEVANS, EVEJOHN, JIANBAI Q, )
OUYANG XINGER, AMERICAN GENIUS & )
CO., INC., GRISELDAMILLER, EASTMAN )
KODAK COMPAMY, CO MIIER, )
HEATHERROBIN, WANG WANSU, DAVID, )
GAOHAI XINYIN, OUYANG SUMIN, )
PARFUMS CHRISTIAN DIOR, KG )
MENSWEAR, OUYANG MENGYUE, )
JOATHOMAS, JULIEANDREW, LI QIANG, )
LIANXI, OUYANG YINGSI, ZHOU WAN )
TING, MAGGIEMITCHELL, NIKE, INC., )
MODESTYADAMS, WAILAM IAO, DEBBIE, )
CASTANO, NOVIAYOUNG, LIN JUN, )
NIXON, ORGANIZATION, DAVID COHEN, )
LIN LIN, MURONG QIOU, )
RGTRHYTHYTWQED, JOHN HOLLAR, )

Case No. 15-cv-3499

**Judge Sharon Johnson Coleman**

**Magistrate Judge Jeffrey T. Gilbert**

SARAROBINSON, SAUTER EILEEN, JIE )
CHEN, OUYANG HUAXIA, OUYANG )
XINGZU, SMITH JONE, CALEDONIAN )
TREE COMPANY, WANG ZENG, GYURE, )
VHBTRYRRT, WOLRENCEHALL, OUYANG )
LANJIU, DOMAIN WHOIS PRIVACY )
PROTECTION SERVICE, OUYANG JIEZHU, )
OUYANG YANGBEI, WANYOU QIXAN, )
JUDY SCOTT, LIUYU YXI, YIUKIUKIH, )
BETANCOURT, YINSI BAOHU YI KAIQI )
(HIDDEN BY WHOIS PRIVACY )
PROTECTION SERVICE), PIN XIANDU, )
DUANMU RUYUAN, CHENCHUNQING, )
MURONG YUYANG, DONALD, XIAOMAI, )
PAUL, JIN ZHENG TRADING CO., LTD. )
XIAMEN, SHENZHEN FULWAY )
ELECTRONIC CO., LTD., BEYOND )
COMPARE, RAINBOW RAIN, SURBORDER )
STORE, YIYI ENJOY CLUB, SHENZHEN )
JOE TECHNOLOGY CO.,LTD., WALK LONG )
LTD, EHOME CO.,LTD, UNITED ACROSS )
HAIR CO. LTD., AMY ACE-TECH, THE SEA )
OF CLOUDS ELECTRON, BRACELETS )
STORE--JIAN, OUTSIDE-SELLER, )
SHENZHEN S U N TECHNOLOGY CO, LTD, )
UNCLE FRANK, HOT! FACTORY OUTLET, )
THE MASSAGE KINGDOM, XUN PAI )
INTERNATIONAL TRADING LIMITED, )
IUNI, 3C MAGAZINE, JULY FLOWERS, )
SOCCER, DERI TRADE CO.,LTD, )
SHENZHEN BEAUTY COMPANY., TALENT )
SHOW_SHOP, GLOBAL ELECTRONICS )
SHOPPING MALL, AVATAR DEPARTMENT )
DISCOUNT STORE, DIRECT SALE, LITTLE )
A SHOPPING MARKET, KEWO TRADE, 5- )
STAR SHOP, SHENZHEN BEAUTYLIFE )
CO.,LTD, SUZHOU KAMIISORI BEAUTY )
FACTORY ( FOR SOHO WHOLESALESER ), )
BAOYILAI---OBD FACTORY, ALI-E-SHOP, )
SZYINZHI, HE XIUYU'S STORE, FASHION )
08880, ETOP SHOP, EASY TO BUY-EBUY, )
YJ FASHION APPAREL, DARYVAN )
INTERNATIONAL INDUSTRIAL CO., LTD, )
DARYVAN INTERNATIONAL INDUSTRIAL )
CO., LTD, ELECTOP TECHNOLOGY )
CO.,LTD, JONY JIANG'S STORE, TRHODA )

SURFING, QUEEN WORLD, AND              )
SHENZHEN CITY HEALTH ELECTRONIC        )
TECHNOLOGY CO., LTD.,                   )
                                        )
_____ Defendants. _____

### SECOND AMENDED COMPLAINT

Plaintiffs Conair Corporation ("Conair") and Babyliss FACO Sprl ("Babyliss"), , (collectively, "Plaintiffs") hereby bring the present action against XIAO MAI, ZHANGXIUXIU, HENRY ROWE, LIINBO, JINYING LIN, FENG JIN, YE BINBIN, ZHONG GUORENMIN, SU SHENG, LANG QIYU, LV DANDAN, ZHU XINXIAO, DAN THURSTON, WEI QINGLAN, OUYANG JIEJIAN, WEN BEN ZHOU, NIAMH BRADY, TORO SUSAN, ABDELHAFIDE HAMMOUMI, LUCAS BRENNAN, AMAYA RAPHAIL, CAMERON LAURENT, ANNE G. HAWKINS, ATHOMAS, DEJIA LI, BESSJONES, BEULAHHALL, BGFTRTGHY, BROOKLEE, BROOKPEDRO, CANDICELOPEZ, WANGZHONGKAI, TAMEKA D HENDERSON, OUYANG RANYUN, OUYANG GUKU, CHEN DONG, PRIVACY PROTECTION SERVICE INC D/B/A PRIVACYPROTECT.ORG, DGDFHDH, AMBERBULL, DOREENCARTER, DEVIN, WENBEN RHYS, BLANKA SON, EVEEVANS, EVEJOHN, JIANBAI Q, OUYANG XINGER, AMERICAN GENIUS & CO., INC., GRISELDAMILLER, EASTMAN KODAK COMPAMY, CO MIIER, HEATHERROBIN, WANG WANSU, DAVID, GAOHAI XINYIN, OUYANG SUMIN, PARFUMS CHRISTIAN DIOR, KG MENSWEAR, OUYANG MENGYUE, JOATHOMAS, JULIEANDREW, LI QIANG, LIANXI, OUYANG YINGSI, ZHOU WAN TING, MAGGIEMITCHELL, NIKE, INC., MODESTYADAMS, WAILAM IAO, DEBBIE, CASTANO, NOVIAYOUNG, LIN JUN, NIXON, ORGANIZATION, DAVID COHEN, LIN LIN, MURONG QIOU, RGTRHYTHYTWQED, JOHN HOLLAR, SARAROBINSON, SAUTER EILEEN, JIE CHEN,

OUYANG HUAXIA, OUYANG XINGZU, SMITH JONE, CALEDONIAN TREE COMPANY, WANG ZENG, GYURE, VHBTRYRRT, WOLRENCEHALL, OUYANG LANJIU, DOMAIN WHOIS PRIVACY PROTECTION SERVICE, OUYANG JIEZHU, OUYANG YANGBEI, WANYOU QIXAN, JUDY SCOTT, LIUYU YXI, YIUKIUKIH, BETANCOURT, YINSI BAOHU YI KAIQI (HIDDEN BY WHOIS PRIVACY PROTECTION SERVICE), PIN XIANDU, DUANMU RUYUAN, CHENCHUNQING, MURONG YUYANG, DONALD, XIAOMAI, PAUL, JIN ZHENG TRADING CO., LTD. XIAMEN, SHENZHEN FULWAY ELECTRONIC CO., LTD., BEYOND COMPARE, RAINBOW RAIN, SURBORDER STORE, YIYI ENJOY CLUB, SHENZHEN JOE TECHNOLOGY CO.,LTD., WALK LONG LTD, EHOME CO.,LTD, UNITED ACROSS HAIR CO. LTD., AMY ACE-TECH, THE SEA OF CLOUDS ELECTRON, BRACELETS STORE--JIAN, OUTSIDE-SELLER, SHENZHEN S U N TECHNOLOGY CO, LTD, UNCLE FRANK, HOT! FACTORY OUTLET, THE MASSAGE KINGDOM, XUN PAI INTERNATIONAL TRADING LIMITED, IUNI, 3C MAGAZINE, JULY FLOWERS, SOCCER, DERI TRADE CO.,LTD, SHENZHEN BEAUTY COMPANY., TALENT SHOW_SHOP, GLOBAL ELECTRONICS SHOPPING MALL, AVATAR DEPARTMENT DISCOUNT STORE, DIRECT SALE, LITTLE A SHOPPING MARKET, KEWO TRADE, 5-STAR SHOP, SHENZHEN BEAUTYLIFE CO.,LTD, SUZHOU KAMIISORI BEAUTY FACTORY ( FOR SOHO WHOLESALESER ), BAOYILAI---OBD FACTORY, ALI-E-SHOP, SZYINZHI, HE XIUYU'S STORE, FASHION 08880, ETOP SHOP, EASY TO BUY-EBUY, YJ FASHION APPAREL, DARYVAN INTERNATIONAL INDUSTRIAL CO., LTD, DARYVAN INTERNATIONAL INDUSTRIAL CO., LTD, ELECTOP TECHNOLOGY CO.,LTD, JONY

JIANG'S STORE, TRHODA SURFING, QUEEN WORLD, and SHENZHEN CITY HEALTH ELECTRONIC TECHNOLOGY CO., LTD. (collectively, "Defendants") and allege as follows:

## I. JURISDICTION AND VENUE

1.        This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., the Patent Act, 35 U.S.C. § 1, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.        Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Amended Schedule A attached hereto (collectively, the "Defendant Internet Stores").  Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Conair's trademarks.  Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold counterfeit Conair products to residents of Illinois.  Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

## II. INTRODUCTION

3.     This action has been filed by Plaintiffs to combat online counterfeiters who trade upon Conair's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products featuring Conair's registered trademarks (collectively, the "Counterfeit Conair Products").  The Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine Conair products, while actually selling Counterfeit Conair Products to unknowing consumers.  The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.  Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their massive counterfeiting operation. Plaintiffs are forced to file these actions to combat Defendants' counterfeiting of Conair's registered trademarks and infringement of Babyliss' registered design patent, as well as to protect unknowing consumers from purchasing Counterfeit Conair Products over the Internet. Conair has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs**

4.     Conair Corporation is a Delaware corporation headquartered in East Windsor, New Jersey, with sales and marketing offices in Stamford, Connecticut.  Conair Corporation is the owner of and has standing to sue for infringement of the trademarks defined below.

5.      Conair is an internationally recognized leader in the development, manufacturing, and marketing of personal and professional health and beauty products and small household appliances.  Conair markets and sells hair dryers, flat irons, curling irons, hot rollers, and other heat styling tools, including, but not limited to, the popular BaBylissPRO, MIRACURL, INFINITI PRO BY CONAIR, CURL SECRET and PERFECT CURL products (collectively referred to as the "Conair Products").  Conair distributes its Conair Products through various channels, including authorized distributors and professional beauty supply stores such as Ulta for the professional-grade Conair Products, and through various retailers throughout Illinois and the United States, including, but not limited to, department stores such as Macy's and large retail corporations such as Target and Wal-Mart for the consumer-grade Conair Products.

6.      Conair Products have become enormously popular, driven by Conair's arduous quality standards and innovative designs.  Among the purchasing public, genuine Conair Products are instantly recognizable as such.  In the United States and around the world, Conair's brands have come to symbolize high quality.

7.      Conair incorporates a variety of distinctive marks in the design of its various Conair Products.  As a result of its long-standing use, Conair owns common law trademark rights in its BaBylissPRO, MIRACURL, CONAIR, INFINITI PRO BY CONAIR, CURL SECRET, PERFECT CURL and other trademarks.  Conair has also registered its trademarks with the United States Patent and Trademark Office.  Conair Products typically include at least one of Conair's registered trademarks.  Often several of Conair's marks are displayed on a single product.  Conair uses its trademarks in connection with the marketing of its Conair Products, including the following federally registered marks, which are collectively referred to as the "Conair Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 994,007 | CONAIR | September 24, 1974 | For: Electric hair dryers, electric curling irons in classes 005, 008, 010, 012. |
| 1,032,163 | CONAIR | February 3, 1976 | For: Electric hair dryers, electric hot combs, electric curling irons, and electric pressing combs in class 011.<br><br>For: Hair brushes in class 021. |
| 1,148,225 | BaByliss | March 10, 1981 | For:  Electric Hair Styling Apparatus-Namely, Electric Hair Straightener, Electric Styling Irons, Electric Brushes and Electric Styling Combs in class 009. |
| 2,248,614 | CONAIR | June 1, 1999 | For: Electrical and/or battery-operated shavers, clippers and trimmers, and non-electrical hand operated shears in class 008.<br><br>For: Electrical curling brushes, electrical hair curling irons, electrical heated hair rollers and hair setters in class 009.<br>For: Electrical and/or battery-operated massagers and electrical heating pads in class 010.<br><br>For: Electrical lighted make-up mirrors in class 020.<br><br>For: Hair brushes, hair combs, hair rollers, hair styling implements, namely, and electrical and non-electrical toothbrushes in class 021. |
| 3,176,276 | BABYLISS PRO TT | November 28, 2006 | For: Hair appliances, namely hair dryers in class 011. |
| 3,331,036 | BABYLISS PRO TT | September 12, 2006 | For: Hair appliances, namely, electric hair curling irons and electric hair straighteners in class |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | 009. |
| 3,513,454 | BABYLISS | October 7, 2008 | For: Hand-held electric hair dryers in class 011. |
| 3,513,456 | BABYLISS | October 7, 2008 | For: Hair brushes; Hair combs in class 021. |
| 3,825,111 | BABYLISS PRO XCLUSIVE | July 27, 2010 | For: Electric hand-held hair styling irons in class 009.<br>For: Hand-held electric hair dryers in class 011. |
| 4,042,126 | Babyliss | October 18, 2011 | For: Electric hair curlers in class 009. |
| 4,246,825 | BABYLISS FOR MEN | November 20, 2012 | For:  Hair clippers; Hair trimmers; Mustache and beard trimmers in class 008. |
| 4,365,347 | Miracurl | July 9, 2013 | For: Electric hair curlers; electric hair curling irons in class 009. |
| 4,561,367 | BabylissPro | July 1, 2014 | For: Electric hair trimmers; Hair clippers; Electric hair curling irons; Electric hair straightening irons; Electric hand-held hair styling irons in class 008.<br><br>For: Electric hair dryers in class 011.<br><br>For: Hair brushes in class 021. |
| 4,464,104 | CURL SECRET | January 7, 2014 | For: Electric irons for styling hair in class 008. |
| 4,272,256 | INFINITI PRO BY CONAIR | January 8, 2013 | For: Electric irons for styling hair in class 008.<br><br>For: Electric hair dryers in class 011.<br><br>For: Electrically heated hair |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | brushes in class 021. |
| 4,400,184 | INFINITI PRO BY CONAIR | September 10, 2013 | For: Electric hair curlers, other than hand implements; Electric hair rollers in class 026. |
| 4,399,723 | INFINITI PRO BY CONAIR | September 10, 2013 | For: Hair brushes in class 021. |
| 4,649,356 | PERFECT CURL | December 2, 2014 | For: Electronic hand-held hair styling irons, in class 08. |

8.     The above registrations for the Conair Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the Conair Trademarks constitute *prima facie* evidence of their validity and of Conair's exclusive right to use the Conair Trademarks pursuant to 15 U.S.C. § 1057(b).  The Conair Trademarks have been used exclusively and continuously by Conair and its predecessors in interest, some since at least as early as 1963, and have never been abandoned.  Conair has devoted substantial resources to promoting the goodwill of the Conair Trademarks.  As a result, the Conair Trademarks have become famous and serve to symbolize Conair and its reputation as an industry leader among stylists and hair care enthusiasts.  True and correct copies of the United States Registration Certificates for the above-listed Conair Trademarks are attached hereto as **Exhibit 1**.

9.     The Conair Trademarks are exclusive to Conair, and are displayed extensively on Conair Products and in Conair's marketing and promotional materials.  Conair has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting

and protecting the Conair Trademarks. As a result, products bearing the Conair Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Conair. Conair Products are among the most popular of their kind in the world. Because of Conair's advertising and promotional efforts and its continuous use of the Conair Trademarks for many years, Conair has attained one of the highest levels of recognition among professional health and beauty brands in the United States, and the Conair Trademarks have become famous marks.

10. The Conair Trademarks are distinctive when applied to the Conair Products, signifying to the purchaser that the products come from Conair and are manufactured to Conair's quality standards. Whether Conair manufactures the products itself or licenses others to do so, Conair has ensured that products bearing its trademarks are manufactured to the highest quality standards. The Conair Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the Conair Trademarks is of incalculable and inestimable value to Conair.

11. Conair's innovative marketing and product designs have enabled Conair to achieve widespread recognition and fame and have made the Conair Trademarks some of the most well-known marks in the professional beauty industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Conair Trademarks have made the marks valuable assets of Conair.

12. Conair has used the Conair Trademarks on and in connection with the advertising and sale of a wide variety of hair styling tools, including, but not limited to, the Conair Products. Conair has sold and advertised its goods in interstate and intrastate commerce, including commerce in the State of Illinois, and in this judicial district. As a result of their widespread use,

these trademarks have become a symbol of high-quality, professional styling tools and are synonymous with Conair. The Conair Trademarks are inherently distinctive or have acquired secondary meaning and, as such, have come to be known as source identifiers for authentic Conair Products.

13.     Babyliss FACO Sprl is a direct subsidiary of Babyliss SARL, which is a direct subsidiary of Conair, and is organized under the laws of Belgium. It is headquartered and has offices at 25 avenue l'independence 4020, Wandre (Liege), Belgium. Babyliss FACO Sprl is the owner of and has standing to sue for infringement of United States Design Patent No. D696,456 entitled "Hair Styling Apparatus" (the "'456 patent"). The '456 Patent was lawfully issued on December 24, 2013, with the named inventor of Pierre L. Julemont. A true and correct copy of the '456 Patent is attached hereto as **<u>Exhibit 2</u>**.

**The Defendants**

14.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell Counterfeit Conair Products to consumers within the United States, including the State of Illinois.

15.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the Conair Trademarks in the same

transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Conair to learn Defendants' true identities and the exact interworking of their massive counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Second Amended Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

16. The success of Conair's brands has resulted in their significant counterfeiting. Consequently, Conair has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Conair has identified hundreds of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer and Aliexpress, including the Defendant Internet Stores, which were offering for sale, selling, and importing Counterfeit Conair Products to consumers in this Judicial District and throughout the United States. Despite Conair's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores, which generate massive profits selling Counterfeit Conair Products. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2013 was over $1.74 billion, up from $1.26 billion in 2012. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands

of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

17. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores or wholesalers selling genuine Conair Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Numerous Defendant Domain Names also incorporate the Conair Trademarks into the URL, and the Defendant Internet Stores often include Conair's copyright-protected content, images, and product descriptions on the websites to make it very difficult for consumers to distinguish such counterfeit sites from an authorized retailer. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. Conair has not licensed or authorized Defendants to use any of the Conair Trademarks or the '456 Patent, and none of the Defendants are authorized retailers of genuine Conair Products.

18. Defendants also deceive unknowing consumers by using the Conair Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Conair Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Conair Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are

shut down.   As such, Conair also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit Conair Products.

19.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.   For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states.   Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information.   On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Amended Schedule A to the Second Amended Complaint, as well as other unknown fictitious names and addresses.   Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

20.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.   For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names.   In addition, Counterfeit Conair Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Conair Products were manufactured by and come from a common source and that Defendants are interrelated.   The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data,

illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from Conair's official conair.com, curlsecret.com, miracurlpro.com and babylissus.com websites.

21.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

22.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Conair's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters

regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

23.    Defendants, without any authorization or license from Conair, have knowingly and willfully used and continue to use the Conair Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Conair Products into the United States and Illinois over the Internet.  Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Conair Products into the United States, including Illinois.

24.    Defendants' use of the Conair Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Conair Products, including the sale of Counterfeit Conair Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Conair.

25.    Nearly all of the Defendant Internet Stores[1] have offered to sell, advertised, and, on information and belief, have sold Counterfeit Conair Products that also infringe the '456 Patent to the United States, including Illinois.

_____

[1]The following eight (8) Defendant Internet Stores are not alleged to have sold Counterfeit Conair Products that also infringe the '456 Patent: (1) aomasz.com on line 113 of the Defendant Domain Names section of Amended Schedule A, associated with the name YinSi BaoHu Yi KaiQi (Hidden by Whois Privacy Protection Service) on line 102 of the Defendants section of Amended Schedule A; (2) chinaseamlessunderwear.com on line 114 of the Defendant Domain Names section of Amended Schedule A, associated with the name YinSi BaoHu Yi KaiQi (Hidden by Whois Privacy Protection Service) on line 102 of the Defendants section of Amended Schedule A; (3) ghdoutlet-it.com on line 2 of the Defendant Domain Names section of Amended Schedule A, associated with the name zhangxiuxiuon line 2 of the Defendants section of Amended Schedule A; (4) ghdukuk.com on line 53 of the Defendant Domain Names section of Amended Schedule A, associated with the name jianbai q on line 47 of the Defendants section of Amended Schedule A; (5) haircare-dubai.com on line 85 of the Defendant Domain Names section of Amended Schedule A, associated with the name Organization on line 76 of the Defendants section of Amended Schedule A; (6) mychiflatiron.com on line 42 of the Defendant Domain Names section of Amended Schedule A, associated with the name Privacy Protection Service INC d/b/a PrivacyProtect.org on line 37 of the Defendants section of Amended Schedule A; (7) nahanttriathlon.com on line 75 of the Defendant Domain Names section of Amended Schedule A, associated with the name zhou wan ting on line 66 of the Defendants section of Amended Schedule A; and (8)

26.     Babyliss has not granted a license or any other form of permission to any of the Defendants or Defendant Internet Store operators with respect to the design of the '456 Patent.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

27.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 26.

28.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered Conair Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Conair Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Conair Products sold or marketed under the Conair Trademarks.

29.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeit reproductions of the Conair Trademarks without Conair's permission.

30.     Conair is the exclusive owner of the Conair Trademarks.  Conair's United States Registrations for the Conair Trademarks (Exhibit 1) are in full force and effect.   Upon information and belief, Defendants have knowledge of Conair's rights in the Conair Trademarks, and are willfully infringing and intentionally using counterfeits of the Conair Trademarks. Defendants' willful, intentional and unauthorized use of the Conair Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Conair Products among the general public.

31.     Defendants'    activities    constitute    willful    trademark    infringement    and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

---

straightenerssale.com on line 72 of the Defendant Domain Names section of Amended Schedule A, associated with the name li qiang on line 63 of the Defendants section of Amended Schedule A.

32.    Conair has no adequate remedy at law, and if Defendants' actions are not enjoined, Conair will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Conair Trademarks.

33.    The injuries and damages sustained by Conair have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Conair Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

34.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 33.

35.    Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Conair Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Conair or the origin, sponsorship, or approval of Defendants' Counterfeit Conair Products by Conair.

36.    By using the Conair Trademarks on the Counterfeit Conair Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Conair Products.

37.    Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Conair Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

38.    Conair has no adequate remedy at law and, if Defendants' actions are not enjoined, Conair will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**COUNT III**
**CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING**
**CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS**
**OPERATING A DEFENDANT DOMAIN NAME INCORPORATING ANY OF THE**
**CONAIR TRADEMARKS**

39.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 38.

40.     Conair is the exclusive owner of the Conair Trademarks.  The U.S. Registrations for the Conair Trademarks (Exhibit 1) are in full force and effect.  Additionally, the Conair Trademarks are highly distinctive and famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

41.     Upon information and belief, Defendants operating a Defendant Domain Name incorporating any of the Conair Trademarks have acted with bad faith intent to profit from the unauthorized use of the Conair Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the Conair Trademarks.

42.     Defendants have no intellectual property rights in or to the Conair Trademarks.

43.     Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

44.     Conair has no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating any of the Conair Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Conair.

## COUNT IV
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, et seq.)

45.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 44.

46.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Conair Products as those of Conair; causing a likelihood of confusion and/or misunderstanding as to the source of their goods; causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Conair Products; representing that their products have Conair's approval when they do not; and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

47.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

48.     Conair has no adequate remedy at law, and Defendants' conduct has caused Conair to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Conair will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## COUNT V
## PATENT INFRINGEMENT OF UNITED STATES DESIGN PATENT NO. D696,456
### (35 U.S.C. § 271) AS TO CERTAIN DEFENDANTS

49.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 48.

50.     Babyliss is the owner of all right, title, and interest in and to the '456 Patent.

51.     Defendants offering for sale Counterfeit Conair Products that infringe the '456 Patent have knowingly and intentionally manufactured, caused to be produced, distributed,

advertised, marketed, offered for sale, and/or sold heat styling tools that infringe the '456 Patent, without authority to do so, in direct violation of 35 U.S.C. § 271.

52.     Defendants offering for sale Counterfeit Conair Products that infringe the '456 Patent have damaged and will continue to damage Babyliss, and Babyliss has no adequate remedy at law.

53.     On information and belief, the acts of each Defendant offering for sale Counterfeit Conair Products that infringe the '456 Patent, herein complained of, constitute willful acts and intentional infringement of the '456 Patent.

54.     In light of the foregoing, Babyliss is entitled to injunctive relief prohibiting Defendants offering for sale Counterfeit Conair Products that infringe the '456 Patent from continuing to infringe the '456 Patent.  Babyliss is also entitled to recover from Defendants offering for sale Counterfeit Conair Products that infringe the '456 Patent all damages adequate to compensate for the infringement, but in no event less than a reasonable royalty, together with interest, costs, and attorneys' fees, in an amount to be determined, which amount can be trebled under 35 U.S.C. § 284.  Additionally, Babyliss is entitled to an award of total profits from each Defendant offering for sale Counterfeit Conair Products that infringe the '456 Patent in an amount of not less than $250 for infringement of Babyliss' design patent under 35 U.S.C. § 289.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using the Conair Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Conair Product or is not authorized by Conair to be sold in connection with the Conair Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Conair Product or any other product produced by Conair that is not Conair's or not produced under the authorization, control, or supervision of Conair and approved by Conair for sale under the Conair Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Conair Products are those sold under the authorization, control, or supervision of Conair, or are sponsored by, approved by, or otherwise connected with Conair;

d. further infringing the Conair Trademarks and damaging Conair's goodwill;

e. otherwise competing unfairly with Conair in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Conair, nor authorized by Conair to be sold or offered for sale, and which bear any Conair trademark, including the Conair Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other

      domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Conair Products;

h.  operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Conair Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine Conair Product or not authorized by Conair to be sold in connection with the Conair Trademarks; and

i.  with respect to Defendants offering for sale Counterfeit Conair Products that infringe the '456 Patent, further infringing Babyliss' '456 Patent;

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through i, above;

3) Entry of an Order that, at Conair's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Conair, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Conair's selection, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of Conair's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

4) Entry of an Order that, upon Conair's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as iOffer and Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any related Alibaba entities (collectively "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall:

    a. disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Conair Products using the Conair Trademarks, including any accounts associated with the Defendants listed on Amended Schedule A;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Conair Products using the Conair Trademarks; and

    c. take all steps necessary to prevent links to the Defendant Domain Names identified on Amended Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index; and

5) That Defendants account for and pay to Conair all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Conair Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6) In the alternative, that Conair be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Conair Trademarks and $100,000 per domain name incorporating any of the Conair Trademarks pursuant to 15 U.S.C. § 1117(d);

7)  That Plaintiffs be awarded their reasonable attorneys' fees and costs;

8)  That Babyliss be awarded treble damages which it has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants offering for sale Counterfeit Conair Products that infringe the '456 Patent, as a result thereof, pursuant to 35 U.S.C. § 284;

9)  That Babyliss be awarded total profits from Defendants offering for sale Counterfeit Conair Products that infringe the '456 Patent for design patent infringement pursuant to 35 U.S.C. § 289; and

10) Award any and all other relief that this Court deems just and proper.

Dated this 22nd day of May 2015.             Respectfully submitted,


/s/ Justin R. Gaudio_____
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Counsel for Plaintiffs Conair Corporation and Babyliss FACO Sprl*